Mr. Bill A. Shirron, Executive Director Arkansas Teacher Retirement System 1400 West Third Little Rock, AR 72201
Dear Mr. Shirron:
I am writing in response to your request for an opinion regarding the laws pertaining to the employer contribution rate to the Arkansas Teacher Retirement System ("the System"). You have cited two laws that are believed to be in conflict: A.C.A. §§ 24-7-401(c)(1)(B) and (C) (Repl. 2000) and § 24-2-701(c) (Supp. 2001). You have asked: "[W]hat action, if any, can [the Board of Trustees] take to follow the law?" You state that "[t]he annual actuarial valuation presented to the Board of Trustees on December 13, 2001, indicated the period to pay off all unfunded liabilities was 125 years." I assume that this valuation was based on the 12% contribution rate specified in § 24-2-701. You then state: "The actuary stated that a one-half of one percent increase would be needed to reduce the period to thirty years."
Before responding, I must set out the full text of the relevant portions of these Code sections to fully elucidate the question you have posed. Section 24-7-401 (Repl. 2000) is part of the Arkansas Teacher Retirement System Act. It provides in relevant part as follows:
 (a)(1) The financial objective of this act is to establish contribution rates which, expressed as percentages of active member payroll, will remain approximately level from generation to generation of Arkansas citizens.
 (2) The contribution rates shall be sufficient to provide that employer contributions each year, together with member contributions, shall be sufficent [sufficient] both to fully cover the costs of benefit commitments being made to members for their service being rendered in each year and to make a level payment which, if paid annually over a reasonable period of future years, will fully cover the unfunded costs of benefit commitments for service previously rendered.
 (b) An actuarial valuation of the entire Arkansas Teacher Retirement System shall be made at least annually by the Board of Trustees of the Arkansas Teacher Retirement System's actuary.
 (c)(1)(A) The financial objective of this act shall be maintained for each fiscal year, and the state employer contribution rate shall be expressed as a percent of active member payroll for each fiscal year.
 (B) The state employer contribution rate shall be established for fiscal years beginning July 1, 1989, and thereafter, by the General Assembly upon the advice of the Joint Interim Committee on Retirement and Social Security Programs. In determining such advice, the Joint Interim Committee on Retirement and Social Security Programs shall use the following input:
 (i) The recommendation of the board based upon consultation with the board's actuary; and
(ii) Information furnished by an actuary retained by the committee.
 (C) The employer contribution rate shall be such that the amortization period for all unfunded liability shall not exceed thirty (30) years.
[Emphasis added.]
Section 24-2-701 (Supp. 2001) is, essentially, a continuation of A.C.A. § 24-3-103 (Repl. 2000), which was part of the uniform benefits provisions that were repealed and then recodified by Act 151 of 2001. See
n. 1, supra. Section 24-2-701 states in relevant part:
 (a) The general financial objective of each Arkansas public employee retirement plan shall be to establish and receive contributions that, expressed as percentages of active member payroll, will remain approximately level from generation to generation of Arkansas citizens. More specifically, contributions received each year shall be sufficient both:
 (1) To fully cover the costs of benefit commitments being made to members for their service being rendered in that year; and
 (2)(A) To make a level payment that, if paid annually over a reasonable period of future years, will fully cover the unfunded costs of benefit commitments for service previously rendered.
 (B) Alternatively, if the costs of benefit commitments for service previously rendered are overfunded, the plan may deduct a level payment that, if deducted annually over a reasonable period of future years, will fully liquidate the overfunded portion of such costs.
 (b) Each Arkansas public employee retirement plan shall cause an actuarial valuation of the plan or fund to be made at least biennially, and preferably annually, to determine how well the plan is meeting the objectives set forth in subsection (a) of this section.
 (c) The employer contribution rates to the retirement systems shall be as follows:
 (1) For the Arkansas Teacher Retirement System, twelve percent (12%);
[Emphasis added.]
 (2) For the State Police Retirement System, twenty-two percent (22%); and
 (3) For the Arkansas Public Employees' Retirement System, the Board of Trustees . . . shall establish employer rates prospectively each year, and the rates shall be based on the actuary's determination of the rate required to fund the plan in accordance with the objectives set forth in subsection (a) of this section.
The above-emphasized portions of these laws presumably form the basis for the belief that a conflict exists. The question, therefore, as I understand it, is whether the Board of Trustees can or must set a contribution rate of 12½% in order to meet the thirty-year amortization period specified in A.C.A. § 24-7-401(c)(1)(C), supra, or whether the set rate is 12% pursuant to A.C.A. § 24-2-701 (c), supra, notwithstanding the fact that the period to pay off all unfunded liabilities is 125 years under the 12% rate.
RESPONSE
Although the answer to your question is not entirely clear from the face of these provisions, their legislative history leads me to conclude that while the Board of Trustees makes a recommendation regarding the employer contribution rate, the rate must be set by the General Assembly. It appears that the rate at this time is the 12% rate that was set by the General Assembly under Act 151 of 2001. See Acts 2001, No. 151, § 8 (codified at A.C.A. § 24-2-701 (Supp. 2001), supra). In my opinion, the Board has no authority to change this rate.
Your question presupposes that these laws are conflicting, which is understandable given the fact that according to the Board's actuary, unfunded liabilities will not be paid off for 125 years under the 12% rate. A review of the legislative history sheds some light, however, on this apparent conflict or ambiguity. With the exception of a few changes that are not relevant to this opinion, Section 24-2-701 was formerly codified as A.C.A. § 24-3-103 (Repl. 2000), which was part of the uniform benefits provisions enacted under Act 793 of 1977. Section 24-7-401 is part of the body of law enacted under Act 427 of 1973 that substantially revised the Teacher Retirement System. In my opinion, these are the relevant acts for purposes of your question.[1] A review of the various amendments to the Teacher Retirement System Act reveals that after passage of the original act (Act 427 of 1973) and until 1989, provision was made for the employer contribution to be established for each fiscal year as measured by an actuarial evaluation of the system made by the Board's actuary.[2] In years 1975 through 1981, a schedule of contributions was set out, with a fixed dollar amount included for fiscal years 1975 and 1976 and a percentage rate specified thereafter. The 1983 amendment contained no schedule. In years 1979, 1981, and 1983, language was added to provide for the Board's actuary to certify any necessary increases each year. See amendatory acts at n. 2, supra. There were no further amendments to the Act until 1989, and I assume that the employer contribution rate was established from 1983 until 1989 based upon "the most recent actuarial valuation of the entire system made by the Board's actuary." Acts 1983, No. 665, § 8.
The significance of this history for purposes of your question lies in the fact that the procedure prior to 1989 for measuring the employer contribution by the Board actuary's valuation stands in stark contrast to the current procedure that was first set in place by a 1989 amendment to A.C.A. § 24-7-401(c)(1), which provided in relevant part that:
 The state employer contribution rate shall be established for a two year period, for fiscal years beginning July 1, 1989, and later, by the General Assembly upon the advice of the Joint Interim Committee on Retirement and Social Security Programs. In determining such advice, the Joint Interim Committee on Retirement and Social Security Programs shall use the following input: the recommendation of the board based upon consultation with the board's actuary and information furnished by an actuary retained by the committee.
Acts 1989, No. 472, § 1 (emphasis added).
This 1989 act also established the 30-year amortization period, now codified at A.C.A. § 24-7-401(c)(1)(C), supra, with regard to unfunded liability.[3]
No percentage contribution rate was specified in this 1989 amendment to the Teacher Retirement Act. Interestingly, however, the provision in A.C.A. § 24-2-701 (Supp. 2001), supra, which specifies a rate for the System, emanates from a 1989 amendment to A.C.A. § 24-3-103 (the uniform benefits provision, originally enacted under Act 793 of 1977, supra). Act 718 of 1989 amended § 24-3-103(c) to change the contribution rates to the various divisions of the Arkansas Public Employees' Retirement System, and to add for the first time a percentage contribution rate for the Arkansas Teacher Retirement System. See Acts 1989, No. 718, § 1. The act specified a rate of 12%. Id. A 12% rate was also specified in subsequent amendments. See Acts 1991, No. 431, § 1; Acts 1997, No. 299, § 1. Seealso Acts 2001, No. 151, § 8, codified at A.C.A. § 24-2-701 (Supp. 2001) which as noted above at n. 1, appears to be a continuation of § 24-3-103.
I suspect, although I cannot state definitively, that this 12% rate in §24-2-701 was established in accordance with § 24-7-401(c)(1), which as you can see from the above legislative history has, since 1989, required that the Arkansas Teacher Retirement System employer contribution rate be established by the General Assembly with the advice of the Joint Interim Committee and with the input of the Board and an actuary retained by the Committee. As noted above, both the 12% rate and this new procedure were added in the same (1989) legislative session. It may thus be reasonable to assume that the rate was derived by the General Assembly following this procedure. Further evidence to this effect may be found in Act 431 of 1991, which amended both § 24-3-103(c) (specifying the rates for named plans and including a 12% rate for the system) and § 24-7-401(c)(1)(B) (removing the 1989 act's reference to a "two-year period" for establishing the rate). The inclusion of these provisions in the same act further suggests their interaction. A conclusive determination cannot be made, however, without reviewing the System's financial status at that time, and in the subsequent years when the rate has been set at 12%. (See Acts 1991, No. 431, § 1; Acts 1997, No. 299, § 1; Acts 2001, No. 151, § 8).
I am also unable to determine why a rate was included in A.C.A. § 24-3-103 (the uniform benefits provision), and now A.C.A. § 24-2-701, rather than in A.C.A § 24-7-401 (the Teacher Retirement System Act). The key factor for purposes of your question, however, is the apparent absence of authority of the Board to establish the employer contribution rate. The foregoing history reveals that the rate is no longer measured by the Board's actuary. The Board recommends a rate to the Joint Interim Committee in accordance with § 24-7-401, supra, based upon consultation with its actuary. But the General Assembly establishes the rate. It should perhaps also be noted that while § 24-7-401 appears to contemplate the General Assembly establishing a rate for each fiscal year of the biennium (see § 24-7-401(c)(1)(B), supra), I am unaware of any established procedure in this regard.
In conclusion, therefore, it is my opinion that the Board of Trustees of the System in all likelihood cannot take any action to establish an employer contribution rate. I understand that currently, a rate increase would be needed to reduce the amortization period for unfunded liability to thirty years. There appears to be no procedure, however, for establishing such a rate. This is a matter for the General Assembly. It seems that legislative action may be necessary if in fact the intent is to establish a rate for each fiscal period that will pay off all unfunded liability in thirty years.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] Section 24-3-103 was repealed by Act 151 (along with the entire former chapter 3 of Title 24), and moved to a new subchapter 7 under the existing chapter 2 that addresses public employee retirement plans generally. See Acts 2001, No. 151, §§ 8 and 9 (repealer). It appears that § 24-2-701 (Supp. 2001) is essentially a continuation of § 24-3-103.
[2] See Acts 1973, No. 427, § 8; Acts 1975, No. 549, § 5; Acts 1977, No. 541, § 4; Acts 1979, No. 681, § 2; Acts. 1981, No. 365, § 5; Acts 1983, No. 619, § 8 and No. 665, § 8.
[3] Section 24-7-401 (c) (1) was amended twice following the 1989 amendment (see Acts 1991, Nos. 17 and 431 and Acts 1993, No. 435). Seefull text of current law above.